IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

HEATHER P. PETTY,                                    6:13-cv-00491- RE

            Plaintiff,                          **OPINION AND ORDER**

        v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

            Defendant.

**REDDEN,** Judge:

Plaintiff Heather Petty brings this action to obtain judicial review of a final decision of

the Commissioner of the Social Security Administration ("Commissioner") denying her claim for

Supplemental Security Income ("SSI").  For the reasons set forth below, the decision of the

Commissioner is reversed and this matter is remanded for the calculation and payment of

benefits.

1  - OPINION AND ORDER

## BACKGROUND

Plaintiff filed her application on January 11, 2010, alleging disability since January 1, 1983, due to "petit mal epilepsy daily from a few sec[onds] to 4 min[utes], depression." Tr. 60. Plaintiff was 27 years old at the time of application. She completed the 9th grade. Tr. 14, 30. Her application was denied initially and upon reconsideration. A hearing was held on November 29, 2011. Tr. 26-59. The Administrative Law Judge ("ALJ") found her not disabled on January 5, 2012. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Plaintiff had the medically determinable severe impairments of seizure disorder, obesity, anxiety NOS, depression NOS, history of methamphetamine abuse, and borderline intellectual functioning. Tr. 12.

The ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 12-13.

The ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but she was limited to simple, routine, entry level positions requiring no work around heights, heavy machinery, or similar workplace hazards.

At step four, the ALJ found Plaintiff had no past relevant work, but that there were jobs in significant numbers in the national economy that Plaintiff could perform such as assembly worker and janitorial worker. Tr. 19-20.

Plaintiff contends that the ALJ erred by improperly weighing medical opinions.

## DISCUSSION

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (Treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of an nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n. 2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

## I. Caleb Burns, Ph.D.

Dr. Burns conducted a neuropsychological evaluation of Plaintiff on January 14, 2009. Tr. 229-47. The evaluation consisted of an interview, a mental status examination, and psychological testing including the Wechsler Adult Intelligence Scale-IV (WAIS-IV), the

Wechsler Memory Scale-III, Trail Making A and B, the Reitan-Indiana Aphasia Screening Test, the Word Reading subtest of the Wide Range Achievement Test-4, the Mood Assessment Scale, and the M Test. Dr. Burns concluded regarding Plaintiff's employability:

> Her combination of cognitive deficits, seizure disorder, history of suicide attempts, her posttraumatic stress disorder symptoms, etc., along with her reported physical limitations probably will render her unemployable for at least the next twelve months. If she is placed in a work situation she is at great risk of decompensating. However, given her ongoing seizures it is very difficult to imagine any employer willing to risk her having seizures in a workplace. (With the onset of the partial seizures she has, she either freezes in place or continues to do what she was doing before. She has walked in front of a car before-and was nearly hit-has walked into walls, poles, fallen down stairs numerous times, etc.)

Tr. 241.

Dr. Burns's diagnostic impressions were Depressive Disorder, NOS, Posttraumatic Stress Disorder, Methamphetamine Abuse, currently in remission, Borderline Intellectual Functioning, and he assessed a GAF of 48. Tr. 241-42. Dr. Burns completed a State of Oregon Department of Human Resources form "Rating of Impairment Severity Report," in which he opined that Plaintiff was markedly restricted in Activities of Daily Living, moderately and markedly impaired in social functioning, and moderately impaired in concentration, persistence, or pace. Tr. 243.

Dr. Burns stated that a minimal increase in mental demands or change in environment would cause Plaintiff to decompensate. Tr. 244. Dr. Burns noted Plaintiff's "memory for verbally presented information is very poor." Tr. 244.

On February 2, 2009, Dr. Burns completed a Mental Residual Function Capacity Report (MRFCR). Tr. 245-46. The MRFCR form lists twenty functional factors. "Markedly Limited"

4 - OPINION AND ORDER

is checked when a "limitation precludes the ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day 5 days a week, or an equivalent schedule." *Id.* Dr. Burns indicated Plaintiff was markedly limited in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to sustain an ordinary routine without special supervision. Tr. 246. Dr. Burns indicated that Plaintiff was markedly limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Burns found Plaintiff markedly limited in the ability to be aware of normal hazards and take appropriate precautions, and in the ability to travel in unfamiliar places or use public transportation. He asserted that Plaintiff's conditions had been disabling since 2007.

The ALJ noted Dr. Burns's reports and stated "these opinions are viewed with extreme caution as the conclusions reached appear quite suspect and inconsistent with the objective evidence." Tr. 16. The ALJ stated that "[a]side from cognitive testing, these diagnoses were based entirely on the claimant's self-report without review of any other evidence." Tr. 17. The ALJ cited Dr. Burns's opinion that Plaintiff would be unemployable for the next twelve months due to both psychological and physical limitations, and found it "appears this opinion was based on factors uncertain to Dr. Burns and unrelated to the purpose of his examination. Assessing limitations based on alleged physical limitations that have no foundation in evidence is considered careless and reduces Dr. Burns' credibility as a psychological evaluator." *Id.* The ALJ concluded:

/ / /

5 - OPINION AND ORDER

> In his assessment, Dr. Burns found the claimant's mental functioning
> to markedly impair her activities of daily living; however, this is in-
> consistent with his clinical interview, which included report of
> providing care for three children under the age of 7, total inde-
> pendence in personal care activities, cleaning her apartment
> daily and to a 'spotless' level of clean. Dr. Burns found the
> claimant's mental functioning to markedly impair her social
> functioning; however, this is inconsistent with his clinical in-
> terview, which included report of grocery shopping, taking
> public transportation, going to church "at least" four times a
> week, and going out to movies and restaurants, which she
> indicated she would do more often if she had more money.
> [citation omitted]. Accordingly, as Dr. Burns' conclusions
> are internally inconsistent with his clinical interview, his
> opinions are given very little weight.

Tr. 17.

## A. Activities of Daily Living

Dr. Burns noted Plaintiff stated she stays out of the kitchen because of her seizures, and that there have been fires. Tr. 233. She reported showering or bathing daily, as well as brushing her teeth daily. As to transportation, Plaintiff told Dr. Burns "I go with my husband. Most of the time I don't go anywhere without him." Tr. 234. She has never had a driver's license. Plaintiff told Dr. Burns that she shops at times with her husband, and sometimes has anxiety attacks in stores.

Plaintiff told Dr. Burns that she cleans, does laundry, bathes and dresses the kids, works with them on their flash cards, and watches cartoons with them. *Id.* Plaintiff said her apartment was clean, "[i]t's spotless. I am a clean freak. I can't handle a mess." Tr. 234. Sometimes she will clean house all night.

/ / /

/ / /

## B. Social Interactions

Plaintiff stated she goes to church "at least" four times a week. Tr. 235. Friends come to see her every several days, but she does not go to visit other people because she is afraid the children might be hurt if she had a seizure. "Most of the time when I go anywhere it is with my mom or my husband." *Id.* She goes out to restaurants and movies "at times" and would go more if she had the money to do so. She stays home most days.

The ALJ relies heavily on the assertion that Dr. Burns's conclusions are inconsistent with his clinical interview. Considering the record as a whole, the ALJ did not identify specific and legitimate or clear and convincing reasons to find Dr. Burns's opinion entitled to little weight.

## II. Kay Stradinger, Psy.D.

Dr. Stradinger examined Plaintiff on April 17, 2010. Tr. 301-07. She reviewed chart notes from Michael Grady, M.D., from December 2009 and January 2010, in which Dr. Grady noted a convulsive disorder, depression, anxiety, and obesity. Tr. 290-96. Dr. Stradinger diagnosed Mood Disorder NOS, rule out bipolar disorder with dissociative features, history of multiple substance abuse/dependence, rule out borderline intellectual functioning, and assessed a GAF of 53. She concluded:

> The claimant is capable cognitively of performing simple and repetitive work-type tasks.
>
> The claimant may have some difficulty interacting appropriately, effectively, and on a sustained basis with supervisors, coworkers and the public given her mood disorder.
>
> The claimant would have a difficult time completing a full workday or workweek independently, effectively, and on a sustained basis given her mood disorder. This seems related to social skill deficits as well.

Tr. 306-07.

The ALJ rejected Dr. Stradinger's conclusion regarding Plaintiff's ability to sustain work,

stating "the evidence does not demonstrate an inability to perform simple and basic tasks." Tr.

17. The ALJ continued:

> Further, the conclusions reached by Dr. Stradinger appear to be
> speculative and based entirely on the claimant's self-report,
> particularly those findings related to mood and social diffi-
> culties.  As noted during the course of Dr. Burns' January 2009
> assessment, clinical interview included report of grocery shopping,
> taking public transportation, going to church "at least" four times
> a week, and going out to the movies and restaurants.  While difficult
> to confirm, the possibility always exists that an examiner may
> express an opinion in an effort to assist an individual with whom
> he or she sympathizes for one reason or another, such as further-
> ance of a person's application of general assistance.  As such,
> the opinion of Dr. Stradinger is given limited weight to the ex-
> tent it supports the residual functional capacity finding, but this
> opinion is also considered with caution as it reflects an inordi-
> nate degree of reliance upon the subjective descriptions of
> symptomatology and limitations set forth by an individual
> seeking cash and medical assistance.

*Id.*

Dr. Stradinger's opinion is bolstered by the fact that it is substantially similar to the

opinion of Dr. Boyd.   The ALJ stated that the "residual functional capacity has been reduced to

accommodate the limitations suggested by Dr. Stradinger...." Tr. 17.  However, the ALJ failed to

include the limitations Dr. Stradinger identified relating to supervisors, coworkers, and the

public.   The ALJ failed to include in the RFC the functional limitations Dr. Stradinger identified

regarding Plaintiff's ability to complete a full workweek "independently, effectively, and on a

sustained basis...." Tr. 306-07. The ALJ failed to identify specific and legitimate or clear and

convincing reasons to reject Dr. Stradinger's opinion.

8  - OPINION AND ORDER

### III. Joshua Boyd, Psy. D.

Dr. Boyd reviewed Dr. Burns's evaluation and completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment on June 11, 2009. Tr. 259-72, 281-84. Dr. Boyd noted borderline intellectual functioning, depressive disorder, and posttraumatic stress disorder, and assessed mild limitations in activities of daily living and social functioning, and moderate difficulties in maintaining concentration, persistence and pace. Dr. Boyd opined that Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions. Tr. 281. Dr. Boyd found "Dr. Burns' opinion of disability is not consistent w/ his own exam findings. Clmt is denying many symptoms of depression and is relatively independent in ADL's." Tr. 271. Dr. Boyd concluded that the RFC as assessed by the ALJ was accurate.

The ALJ gave "some weight" to Dr. Boyd's assessment, but "the social limitations assessed do not seem particularly significant, especially in light of the claimant's report of social activities detailed during the course of Dr. Burns' January 2009 assessment." Tr. 18. As noted above, the ALJ failed properly to weigh the evidence of social limitations.

### IV. Remand for Payment of Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-

9 - OPINION AND ORDER

39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)).  The court

may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a

claimant is disabled under the Act.  *Id* at 1138.

    Under the "credit-as-true" doctrine, evidence should be credited and an immediate award

of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for

rejecting such evidence; (2) there are no outstanding issues that must be resolved before a

determination of disability can be made; and (3) it is clear from the record that the ALJ would be

required to find the claimant disabled were such evidence credited.  *Id.*  The "credit-as-true"

doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in

determining whether to enter an award of benefits upon reversing the Commissioner's decision.

*Connett v. Barnhart,* 340 F.3d 871,  876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir.

2003)(en banc)).  The reviewing court should decline to credit testimony when "outstanding

issues" remain.  *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The ALJ's failure to credit the opinions of the two examining physicians is erroneous for the reasons set out above.  The Vocational Expert testified that, if Drs. Burns and Stradingers' opinions are credited, Plaintiff would be unable to maintain employment.  Tr. 47.

Accordingly, this matter is remanded for the calculation and award of benefits.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

Dated this ˙⫯˙ day of May, 2014.


JAMES A. REDDEN
United States District Judge